```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
PATRICK GUENTANGUE,                                  :

                Plaintiff,                           : 09 Civ. 7369 (DAB) (GWG)

        -v.-                                         : REPORT AND RECOMMENDATION

THE CITY OF NEW YORK,                                :

                Defendant.                           :
---------------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Patrick Guentangue, proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983 against the City of New York ("the City"), alleging violations of his Fourth, Fifth, Sixth and Fourteenth Amendment rights. Defendant has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, defendant's motion should be granted.

I.      BACKGROUND

        A.      Facts

The following facts are not disputed by plaintiff.

On January 31, 2008, at approximately 6:35 p.m., plaintiff was stopped by New York City Police Officer, Keith Johnson, for making an illegal turn while driving his automobile in the vicinity of Riverside Drive and West 80th Street. See Deposition of Patrick Guentangue (annexed as Ex. B to Declaration of Ryan G. Shaffer, filed Apr. 14, 2011 (Docket # 46) ("Shaffer Decl.")) ("Guentangue Depo.") at 52, 53-54. Johnson told Guentangue that he had "made an illegal turn and . . . requested [his] identification." Guentangue Depo. at 54. Plaintiff concedes that it is possible that he may have made an illegal turn. Id. at 53. At the time of the stop, Guentangue was unable to provide Johnson with a valid driver's license. Id. at 19, 20-22,

55. Plaintiff was driving with a revoked license. See id. at 20. However, plaintiff was unaware at the time that his license had been revoked. See id.; Affirmation in Support of Motion in Opposition to Defendant's Motion for Summary Judgment (annexed to Notice of Motion in Opposition to Defendant's Motion for Summary Judgment, filed May 5, 2011 (Docket # 52) ("Pl. Mot.")) ("Pl. Aff.") ¶ 10. Guentangue was arrested and was told that the reason for his arrest was that he "had a suspended license." Guentangue Depo. at 56. He was taken to the 20th police precinct. Id. at 57-58. Sometime after his arrest, plaintiff was arraigned and charges were brought against him relating to the January 31, 2008 incident. See New York Criminal Court Complaint (annexed as Ex. C to Shaffer Decl.); Certificate of Disposition (annexed as Ex. B to Amended Complaint, filed Oct. 4, 2010 (Docket # 33) ("Am. Compl.")) ("Cert. Disp."). "The charges against plaintiff were dismissed on July 17, 2008 on speedy trial grounds." Defendant's Statement of Undisputed Facts Pursuant to Rule 56.1, filed Apr. 14, 2011 (Docket # 47) ("Def. 56.1 Stat."); see Cert. Disp. Plaintiff was incarcerated from February 1, 2008 until July 24, 2008. See History NYSID Number Search (annexed as Ex. B to Am. Compl.). It appears that defendant's incarceration arose as a result of an immigration hold and a separate felony charge. See Guentangue v. City of New York, 2010 WL 2612323, at *1 n.1 (S.D.N.Y. July 1, 2010), adopted by 2010 WL 2942659 (S.D.N.Y. July 26, 2010).

Guentangue filed a notice of claim with the New York City Comptroller's office on August 5, 2009. See Pl. Aff. ¶ 8; Acknowledgment of Claim (annexed as an exhibit to Pl. Aff.).

B.   Procedural History

Plaintiff filed the original complaint in this action on August 21, 2009, naming the City, the New York City Police Department ("NYPD"), the New York County District Attorney ("NYCDA"), and the New York City Department of Correction ("NYCDOC") as defendants.

See Complaint, filed Aug. 21, 2009 (Docket # 2). Plaintiff failed to serve the NYPD and the NYCDOC. See Order to Show Cause, filed Feb. 4, 2010 (Docket # 19) ("Feb. 4 Order") at 1; Dismissal Order, filed May 18, 2010 (Docket # 22) ("May 18 Order") at 1. On February 4, 2010, the district court issued an Order directing plaintiff to show cause why "his cause of action against [d]efendants [NYPD] and [NYCDOC] should not be dismissed for failure to prosecute." See Feb. 4 Order at 1. Plaintiff failed to respond to the court's February 4 Order. See May 18 Order at 1. NYPD and NYCDOC were dismissed as defendants on May 18, 2010. See id. at 2. Plaintiff's subsequent motion for reconsideration of the court's May 18 Order was denied on July 26, 2010. See Guentangue v. City of New York, 2010 WL 2942659, at *2-3 (S.D.N.Y. July 26, 2010).

On January 29, 2010, the NYCDA filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). See Notice of Motion, filed Jan. 29, 2010 (Docket # 17). NYCDA's motion was granted on July 26, 2010. See Guentangue, 2010 WL 2942659, at *1-2. On October 4, 2010, the Court granted plaintiff's motion to file an amended complaint. See Memorandum Endorsement, filed Oct. 4, 2010 (Docket # 32). Guentangue's amended complaint was filed on October 4, 2010, naming only the City as a defendant. See Am. Compl. The City submitted its answer on October 27, 2010. See Answer to Amended Complaint, filed Oct. 27, 2010 (Docket # 35).

Defendant filed the instant motion on April 14, 2011.[1] Plaintiff's opposition papers, including a document labeled as a cross-motion, see Pl. Mot., were submitted on May 5, 2011,

---

[1] See Notice of Motion, filed Apr. 14, 2011 (Docket # 45); Shaffer Decl.; Def. 56.1 Stat.; Defendant City of New York's Local Civil Rule 56.2 Notice to Pro Se Litigant for Opposing Summary Judgment, filed Apr. 14, 2011 (Docket # 48); Defendant City of New York's Memorandum of Law in Support of its Motion for Summary Judgment, filed Apr. 14, 2011 (Docket # 49).

and defendant replied on May 31, 2011, see Reply Memorandum of Law in Further Support of Defendant's Motion for Summary Judgment, filed May 31, 2011 (Docket # 53).

II.     LAW GOVERNING SUMMARY JUDGMENT MOTIONS

Rule 56(a) of the Federal Rules of Civil Procedure states that summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, "[t]he evidence of the non-movant is to be believed" and the court must draw "all justifiable inferences" in favor of the nonmoving party.  Id. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)). Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial,'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (additional citation omitted) (emphasis in original), and "may not rely on conclusory allegations or unsubstantiated speculation," Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998) (citations omitted).  In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." Anderson, 477 U.S. at 256.  Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case." Nebraska v. Wyoming, 507 U.S. 584, 590 (1993) (quoting Celotex, 477 U.S. at 322) (internal

quotation marks omitted) (alteration in original).  Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case."  Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996) (citing Anderson, 477 U.S. at 247-48).  The same rules apply to a pro se litigant.  See, e.g., Bennett v. James, 737 F. Supp. 2d 219, 226 (S.D.N.Y. 2010) ("Notwithstanding the deference to which a pro se litigant is entitled, as well as the deference accorded to a non-movant on a summary judgment motion[, the non-movant] must produce specific facts to rebut the movant's showing and to establish that there are material issues of fact requiring a trial.") (internal quotation marks and citations omitted).

III.   DISCUSSION

    A.   Federal Claims

To prevail on a claim under § 1983, Guentangue must show that he was denied a constitutional or federal statutory right and that the deprivation of such right occurred under color of state law.  See 42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48 (1988).  Section 1983 does not grant any substantive rights but rather "provides only a procedure for redress for the deprivation of rights established elsewhere," such as in the Constitution or federal statutes.  See Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted), cert. denied, 512 U.S. 1240 (1994).

Guentangue alleges that the City is liable under § 1983 because it subjected him to a false arrest, unlawful imprisonment, and malicious prosecution, and charged him for various criminal offenses without probable cause in violation of his rights under the Fourth, Fifth, Sixth, and

Fourteenth Amendments.[2]  Municipalities may be treated as "persons" for the purpose of § 1983 claims "where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers."  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978); accord Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 125 (2d Cir. 2004).  A municipality may not, however, be held liable under § 1983 on the basis of respondeat superior.  Monell, 436 U.S. at 694-95; accord Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008), cert. denied, 130 S. Ct. 95 (2009); Plair v. City of New York, --- F. Supp. 2d ----, 2011 WL 2150658, at *7 (S.D.N.Y. May 31, 2011).  "Rather, a plaintiff must establish both a violation of his or her constitutional rights and that the violation was caused by a municipal policy or custom; that is, that the policy or custom was the actual 'moving force' behind the alleged wrongs."  Jouthe v. City of New York, 2009 WL 701110, at *7 (E.D.N.Y. Mar. 10, 2009) (citing Monell, 436 U.S. at 694-95; Bd. of the Cnty Comm'rs v. Brown, 520 U.S. 397, 403-04 (1997)).

> To establish a policy, the plaintiff must show one of the following:
>
> (1) a formal policy, promulgated or adopted by the City, Monell, 436 U.S. at 690; (2) that an official with policymaking authority took action or made a specific decision which caused the alleged violation of constitutional rights, Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986); or (3) the existence of an unlawful practice by subordinate officials was so permanent or well settled so as to constitute a 'custom or usage' and that the practice was so widespread as to imply the constructive acquiescence of policymaking officials, City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988).

Jouthe, 2009 WL 701110, at *7; accord Howell v. Port Chester Police Station, 2010 WL 930981,

---

[2] Guentangue mentions in passing in his opposition papers that the City should also be found liable for "several other constitutional and civil rights violations."  Pl. Aff. ¶ 15.  He cites no provisions of law that were breached nor does he specify which constitutional provisions were allegedly violated.  Accordingly, we do not consider this argument further.

at *2 n.4 (S.D.N.Y. Mar. 15, 2010).

If the municipality's liability is based on a failure to train theory, a plaintiff must establish that the municipality's failure to train "amounts to deliberate indifference to the rights of persons with whom the [employee comes] into contact." Jenkins v. City of New York, 478 F.3d 76, 94 (2d Cir. 2007) (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989)) (internal quotation marks omitted). The Second Circuit has established three requirements that must be met before a municipality's failure to train constitutes deliberate indifference:

> "First, the plaintiff must show that a policymaker knows 'to a moral certainty' that her employees will confront a given situation." [Walker v. City of New York, 974 F.2d 293, 297 (2d Cir. 1992), cert. denied, 507 U.S. 961 (1993)] (citing Harris, 489 U.S. at 390 n.10, 109 S. Ct. 1197). "Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation." [Walker, 974 F.2d at 297]. "Finally, the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." Id. at 298. "In addition, at the summary judgment stage, plaintiffs must 'identify a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation.'" Green v. City of New York, 465 F.3d 65, 82 (2d Cir. 2006) (quoting [Amnesty Am., 361 F.3d at 129), cert. denied, 131 S. Ct. 125 (2010)].

Jenkins, 478 F.3d at 94.

A plaintiff's "[c]onclusory allegations of municipal liability will not defeat a motion for summary judgment on a Monell claim." Jouthe, 2009 WL 701110, at *8 (alteration in original) (citations omitted). "The mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993); accord Coleman v. City of Syracuse, 2011 WL 13808, at *8 (N.D.N.Y Jan. 4, 2011); Rateau v. City of New York, 2009 WL 3148765, at *11 (E.D.N.Y. Sept. 29, 2009). Additionally, "[p]roof of a single incident

7

of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." City of Okla. City v. Tuttle, 471 U.S. 808, 823–24 (1985); see Ricciutti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991) ("a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy."); Miller v. City of New York, 2010 WL 99380, at *2 (S.D.N.Y. Jan. 5, 2010).

     Here, even if the Court were to assume that Guentangue's constitutional rights were violated, his claims nonetheless fail because he has not provided any evidence, other than mere assertions, see Am. Compl. at 2-3, that Johnson's – or any other municipal employee's – actions were undertaken in accordance with or pursuant to a policy or custom of the City. In fact, Guentangue does not even address this issue in his opposition papers and instead argues that the City should be held liable simply because Johnson's actions caused him harm. See Pl. Aff. ¶ 14. Furthermore, with respect to his allegations regarding the City's failure to train, see id., plaintiff has not even identified in what way the City's training is insufficient, let alone provided any evidence that tends to support his allegation. Accordingly, plaintiff's § 1983 claims against the City must fail. See Jouthe, 2009 WL 701110, at *8 (summary judgment granted for city where plaintiffs failed to provide any evidence in support of their allegations that city employees acted pursuant to city custom or policy and that the city failed to adequately train their employees); Feurtado v. City of New York, 337 F. Supp. 2d 593, 598-600 (S.D.N.Y. 2004) (summary judgment granted in favor of defendant where plaintiff failed to submit any evidence of a Monell violation); Brodeur v. City of New York, 2002 WL 424688, at *6 (S.D.N.Y. Mar. 18, 2002) (court dismisses complaint against city where plaintiff failed to allege "specific factual

allegations sufficient to establish that a municipal policy or custom caused [plaintiff's] alleged injury").

  B. State Claims

While the City argues it is entitled to summary judgment on Guentangue's state claims, it does not appear that the amended complaint alleges a violation of any New York state law. Nor has plaintiff claimed in his opposition papers that the City violated a state law. To the extent plaintiff's amended complaint can be interpreted as alleging state claims against the City, these claims fail because plaintiff has not complied with the requirements of New York General Municipal Law §§ 50-e and 50-i.

"New York General Municipal Law . . . §§ 50-e and 50-i require that plaintiffs asserting state tort law claims against a municipal entity or its employees acting in the scope of employment must (1) file a notice of claim within ninety days after the incident giving rise to the claim, and (2) commence the action within a year and ninety days from the date on which the cause of action accrues." Harris v. Howard, 2009 WL 3682537, at *3 (S.D.N.Y. Oct. 30, 2009) (citing N.Y. Gen. Mun. Law §§ 50-e and 50-i). In addition, § 50-i(1)(b) provides that "it shall appear by and as an allegation in the complaint or moving papers that at least thirty days have elapsed since the service of such notice and that adjustment or payment thereof has been neglected or refused." N.Y. Gen. Mun. Law § 50-i(1)(b). "The notice of claim requirements are strictly construed, and a plaintiff's 'failure to comply with the mandatory New York statutory notice-of-claim requirements generally results in dismissal of his claims.'" Harris, 2009 WL 3682537, at *3 (quoting Warner v. Vill. of Goshen Police Dep't, 256 F. Supp. 2d 171, 175 (S.D.N.Y. 2003)). These requirements apply regardless of whether the action is commenced in state or federal court. See Felder v. Casey, 487 U.S. 131, 151 (1988); Hardy v. N.Y.C. Health &

9

Hosp. Corp., 164 F.3d 789, 793 (2d Cir. 1999).

Plaintiff concedes that he did not file his notice of claim until August 5, 2009, see Pl. Aff. ¶ 8, more than 18 months after the incident. Accordingly, plaintiff's state claims must be dismissed. See In re Dayton, --- F. Supp. 2d ----, 2011 WL 2020240, at *12 (S.D.N.Y. Mar. 31, 2011) (court dismisses plaintiff's state law claims where plaintiff failed to serve notice of claim within 90 days after the incident giving rise to the claim); Dingle v. City of New York, 728 F. Supp. 2d 332, 353-54 (S.D.N.Y. 2010) (same).

IV.     CONCLUSION

For the foregoing reasons, the City's motion for summary judgment (Docket # 45) should be granted. Plaintiff's cross-motion (Docket # 52) should be denied.

## PROCEDURE FOR FILING OBJECTIONS TO THIS
## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days including weekends and holidays from service of this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Deborah A. Batts, and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Batts. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated: August 10, 2011
      New York, New York

                                                         GABRIEL W. GORENSTEIN
                                                         United States Magistrate Judge

Copies to:

Patrick Guentangue
35 West 126th Street
New York, NY 10027

Ryan Glenn Shaffer
New York City Law Department
100 Church Street
New York, NY 10007